Dennis **FIDLER**, Appellee,

v.

Erin **CUNNINGHAM–SMALL,**
Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 24, 2005.
Filed March 16, 2005.

Christopher M. Riedlinger, Pottsville, for appellant.

Dirk S. Berger, Pottsville, for appellee.

BEFORE: HUDOCK, MONTEMURO * and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 This appeal prompts our analysis of the tender years exception to the rule against hearsay, also known as the Tender Years Hearsay Act, in the context of a custody dispute. After careful consideration, we affirm the order of the trial court awarding primary physical custody to Father.

¶ 2 Mother and Father, now divorced, have two daughters; one was born in 1996, the other in 1997. Since October of 2000, the parties have shared legal custody of the children. Mother has had primary physical custody with a grant of partial custody to Father that included visitation every other weekend, two evenings per week, extended summer vacation and par-

* Supreme Court Justice assigned to the Superior Court.

tial holidays. The custody order also included a mandate that the parties refrain from deriding, ridiculing, condemning or in any manner derogating one another in the presence of the children.

¶ 3 In March, 2004, the Schuylkill County Children and Youth Agency (The Agency) received a report that Mother's husband, Mark Small, had sexually abused the parties' daughters. Agency personnel went to Mother's house to interview the girls and on that date the girls confirmed that Small had touched them inappropriately. However, on the following day, Mother brought the girls to the Agency's offices where they reported that the allegations were fabricated and, further, that Father's girlfriend, Natalie Zimmerman, had prompted them to make the false allegations. Further investigation, and additional interviews at which the girls repeated and then again recanted the allegations, led the Agency to deem the initial report of abuse unfounded.

¶ 4 Prior to any finding by the Agency, Mother filed a petition for emergency relief and a finding of contempt against Father. At a hearing in April of 2004, both girls testified before the court, as did Father and Zimmerman. The girls, aged six and seven at the time, confirmed that they had made the initial allegations and later recanted them. When asked if Small had touched them, they replied that he had not. One of the girls also testified that Zimmerman had prompted the allegations. Despite these statements, the girls' testimony was at times confusing and often vague. It was also contradictory in some respects. The trial court found the evidence "inconclusive" and was unable to conclude that the allegations had been

prompted by Zimmerman. As a result, the court denied Mother's petition for relief and refused to hold Father in contempt.

¶ 5 Three months later, on July 12th, Father filed a petition for special relief seeking primary physical custody of his daughters. He relied on the same allegations of abuse that were the subject of the Agency's earlier investigation and sought a hearing on the matter. At the hearing, Father presented videotaped interviews conducted by the Agency on July 9, 2004. Apparently, Father brought the girls to the Agency after they repeated their allegations to him. Agency personnel interviewed the girls and then referred them to the Children's Resource Center in Harrisburg, where they were interviewed (on videotape) by a caseworker there. Although Father had not seen the tapes himself, he apparently spoke with Agency personnel about the interviews. Father offered the tapes to the court in lieu of the girls' direct testimony and in support of his claim that the girls were not safe with Mother and her new husband.

¶ 6 Mother objected to the admission of the tapes, but the court reviewed them in camera and ultimately concluded they were admissible as substantive evidence.[1] The court also heard testimony from Father, as well as Christina Filiash, a child protective services investigator at the Agency. Filiash was involved in the investigation from its inception and testified to events that occurred from March through the present. Filiash told the court that the allegations of abuse were the same as those made previously and that the only new claims were that Mother had told the girls to tell Agency personnel they had lied about the allegations.

1. It appears that neither parent was permitted to view the tapes. Just prior to the court's in camera review of the tapes, Agency personnel informed the court that the district attorney's office requested that the parents be barred from viewing the tapes.

¶ 7 Following the hearing, the trial court held the matter under advisement, but several days later entered an order transferring primary physical custody to Father and limiting Mother's visitation to daylight hours without any contact with Small. Mother filed this timely appeal.

¶ 8 Although Mother purports to raise two claims on appeal, her brief asserts a single argument, that is, that the trial court's admission of the videotaped statements was improper hearsay as it did not meet the requirements of the Tender Years Hearsay Act, 42 Pa.C.S.A. § 5985.1 (the Act).

> Our standard of review in custody matters is well settled. We are "not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record." We are not authorized to "nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court." "Rather, we are bound by findings supported by the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court."

\* \* \*

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. A trial court has wide discretion in ruling on the relevancy of evidence and its rulings will not be reversed absent an abuse of discretion.

*B.K. v. J.K.*, 823 A.2d 987, 990 & 991–92 (Pa.Super.2003) (citations omitted).

¶ 9 The Act, in pertinent part, provides as follows:

(a) General Rule.—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

> (1) the court finds, in an in camera hearing, that the evidence is relevant and the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
>
> (2) the child either:
>
> > (i) testifies at the proceeding; or
> >
> > (ii) is unavailable as a witness.

(a.1) Emotional distress.—In order to make a finding under subsection (a)(2)(ii) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

> (1) observe and question the child, either inside or outside the courtroom.
>
> (2) hear testimony of a parent or custodian or any other person, such as a person who has dealt with the

child in a medical or therapeutic setting.

42 Pa.C.S.A. § 5985.1

¶ 10 The Act has been described as allowing for admission of a child's out-of-court statement "due to the fragile nature of young victims of sexual abuse." *Commonwealth v. Fink*, 791 A.2d 1235, 1248 (Pa.Super.2002). At the same time, the Act "contemplates the inherent untrustworthiness of hearsay evidence and requires a firm foundation for any hearsay admitted under its terms," thus permitting admission of such evidence only in certain, limited circumstances. *Commonwealth v. Bean*, 450 Pa.Super. 574, 677 A.2d 842, 844 (1996). As initially passed in 1989, the Act's application was limited solely to criminal proceedings. But in 2000, the Act was amended to allow for its use in civil proceedings. Despite this significant modification, there are very few civil appellate cases interpreting the Act.[2] This case, a family law matter involving custody rights, represents a new application of § 5985.1.

¶ 11 We observe at the outset that the Act makes no distinction between use in criminal proceedings and use in civil proceedings. And while it is clear that the statements offered for admission need not be electronically recorded, *In re A.D.*, 771 A.2d 45 (Pa.Super.2001), the Act includes no language that would accord special status to those that are. In all circumstances, the trial court is required first to assess the reliability of the proffered statement and second, the availability of the child who made it. If the child whose statement is offered will not be presented as a witness, the court must determine whether the child is "unavailable," that is, whether testifying would cause serious emotional distress that would substantially impair the child's ability to communicate reasonably before the court. Only if both prongs are met will the evidence be deemed admissible. We will address each prong of the analysis, as Mother claims that neither was met.

¶ 12 With regard to the first prong, relevance and reliability, we begin with the language of the statute. Section 5985.1 directs the court to consider the relevance of the statement along with the time, content and circumstances in which it was made. Mother concedes the relevance of the statements here, but claims that the circumstances surrounding them militate in favor of excluding them; that is, Mother insists the statements are unreliable.

¶ 13 There are several factors a court may consider in determining reliability under § 5985.1, including, but not limited to, "the spontaneity and consistent repetition of the statement(s); the mental state of the declarant; the use of terminology unexpected of a child of similar age; and the lack of a motive to fabricate." *Commonwealth v. Hunzer*, 2005 PA Super 13 at ¶ 27 (citations omitted). In this case, these factors neither favor nor hinder a finding of reliability. Certainly the allegations have been repeated by the girls, but they have been recanted as well. In addition, there is a danger that there is some motive to lie in this case; however, it is unclear whether that motive exists as to

2. The only civil case we have discovered under the amended version of § 5985.1 is one in which a juvenile accused of child sexual assault challenged a Department of Public Welfare (the Department) order that denied his request to expunge a report naming him as a perpetrator of abuse and placing his name on a registry for that purpose. *See A.O. v. De-* *partment of Public Welfare*, 838 A.2d 35 (Commw.Ct.2003). Without much discussion, the panel in *A.O.* relied on both § 5985.1 and § 5986 (addressing the use of hearsay in proceedings commenced under the Juvenile Act) to find that there was enough evidence of the sexual abuse to affirm the Department's order.

the allegations (proffered by Father) or the recantations (proffered by Mother).

¶ 14 "The main consideration for determining when hearsay statements made by a child witness are sufficiently reliable is whether the child declarant was particularly likely to be telling the truth when the statement was made." *Commonwealth v. Lyons*, 833 A.2d 245, 255 (Pa.Super.2003). Mother asserts that the girls are unlikely to be telling the truth because of the timing of the statements. She argues that the allegations arose (and the girls were interviewed) immediately after they spent time with Father. Mother claims that her daughters have "gone back and forth making allegations against Mr. Small and recanting the allegations against Mr. Small" and argues that the fact that the children had been in the exclusive custody of Father for several days prior to the videotaped statements establishes that they are unreliable.

¶ 15 The trial court was made aware of Mother's position at the hearing when counsel argued that the timing of the statements made them suspect. But the court refused to base its finding of reliability on the time the statements were made. Instead, the court considered the tapes themselves, not for the substance of the allegations, but for the manner in which the statements were elicited. In concluding that the statements were reliable, the court focused on the skill of the caseworker who took the statements and the methods by which she conducted the interviews.

¶ 16 We have reviewed the tapes at issue with an eye toward reliability and we find no trial court error in deeming them reliable. As Mother's counsel noted at the August hearing, it appears that "the children have been consistent in giving the version of events that the parent they're in the current custody of would like them to give." However, that fact works for and against both parties, according little clarity for the court. The first recantation occurred one day after the allegations were made when Mother, who had custody of the children, brought them back to Agency personnel to report that the allegations were not true. Additional recantations and renewed allegations have followed.

¶ 17 Under these unique circumstances, it was reasonable that the trial court would not discount the reliability of the latest report simply because of its timing. And it is likewise reasonable that the court would look beyond the reliability factors set out above and turn to the tapes in an attempt to assess reliability, because the tapes revealed the actual meeting between the children and an objective third party (the caseworker who conducted the interview) without the presence of either parent. *See Lyons, supra* (holding that child's statements to psychologist and special agent were reliable because, among other things, questions were open-ended and not prompted by those third parties).

¶ 18 In addition to relying on the tapes themselves, the trial court also made inquiries of Ms. Filiash, the Agency's investigator. Filiash conducted all of the interviews with the girls beginning in March. She was also present for the July videotaped interviews. At the court's request, Filiash described the nature of the girls' allegations and recantations. She stated that the recantations had "a lot of inconsistencies" and that based on the entire history of the case, the matter remained a "continuing investigation" at the Agency. We find that the trial court's reliance on Ms. Filiash was reasonable in light of her status as an employee of the Agency and her extensive experience with the girls and this case.

¶ 19 Finally, in considering all of the possible sources of information the court

had at its disposal to assess reliability, we do not discount the fact that the court was familiar with the demeanor of both girls, who already testified before the court some four months earlier. Thus, the court's viewing of the videotape certainly was informed by this prior knowledge.

¶ 20 Upon review of the entire record, including the videotapes, we find no error in the trial court's finding that the statements made in the taped interviews provided sufficient indicia of reliability.

¶ 21 Mother's remaining claim is that even if reliability was established, the second prong of § 5985.1 was not satisfied. The Act requires not only that the hearsay statement be a reliable one, but also that the declarant testify at the proceeding or, in the alternative, be deemed "unavailable." The definition of unavailability for purposes of § 5985.1 is unlike standard definitions for the term in the context of hearsay. Instead, unavailability is narrowly defined in explicit terms within the Act. The law requires the trial court to determine that, based on evidence presented to it, the giving of testimony by the child would cause the child to suffer "serious emotional distress" such that it would "substantially impair the child's ability to reasonably communicate." 42 Pa.C.S.A. § 5985.1(a.1). In making this finding, the trial court has the option of observing and questioning the child. It may also rely on testimony from others connected to the child, such as a parent, guardian, or a person who has dealt with the child in a medical or therapeutic setting. 42 Pa. C.S.A. § 5985.1(a.1)(1) & (2). These possible avenues of inquiry are merely advisory, not mandatory. *See Lyons, supra* (holding that the trial court was not required to question child directly and could rely on testimony of doctor who provided therapeutic treatment).

¶ 22 Mother argues that there was simply no evidence upon which the trial court could have concluded that testimony by the girls would have resulted in serious emotional distress and a substantial impairment of their ability to communicate. Mother challenges the court's reliance on Ms. Filiash, asserting that she is not an expert in psychology. In addition, Mother claims that Filiash's testimony—specifically, her bald statement that the girls would not benefit from testifying and her unsubstantiated claim that the girls were exhibiting behavior problems—was inadequate to support a finding of unavailability. Mother further notes that Father never testified about behavior problems with girls.

¶ 23 According to Mother, the trial court "just assumed" that the girls would experience serious emotional distress and that their ability to communicate would be substantially impaired. Appellant's Brief at 20. What Mother fails to consider, however, is the fact that the trial court had an opportunity to observe the girls first-hand when they were subjected to live testimony at the April hearing. Following that hearing, at which both girls testified and the parties' lawyers were permitted to question them, the court found their testimony inconclusive. After listening to their statements and observing them in person, the trial judge could not say "whether they had been prompted to make the allegations of sexual abuse or not." Clearly, the trial court had direct experience with these young girls and made assessments regarding their inability to communicate via live testimony.

¶ 24 As to the girls' serious emotional distress, the trial court made its determination not based solely on Ms. Filiash's or Father's testimony, but based on all of the information at its disposal at that time, including the tapes themselves and, per-

haps most importantly, its own experience with and observations of the children. From all of that evidence, the trial court was able to determine whether additional live testimony in August would so upset the girls that they would experience serious emotional distress and their ability to communicate would be impaired.

¶ 25 The factors that supported the reliability of the statements in the taped interviews included questioning by a neutral third party who did not prompt or suggest answers and the absence of the parents and/or their attorneys to subject the girls to examination in an adversarial manner. The inverse of those factors, particularly the presence of parents and attorney adversaries cross-examining the girls, lends support to a finding of serious emotional distress and inability to communicate. Because the trial court in this case witnessed both scenarios first-hand, we conclude that its finding of unavailability was not in error.

¶ 26 We caution however, that our resolution of this case is based on its unique facts, specifically, the trial court's opportunity to observe the girls under each condition. While such opportunity is not mandatory, its existence here amply supports the trial court's findings. Here, there was no expert offered and no indication that the girls were being treated by a mental health professional. The Act does not require the testimony of experts; it only provides that the court may consider such testimony when offered. Even though the Act does not mandate the type of evidence upon which the court must rely, it does require that some concrete evidence of serious emotional distress be presented. We believe that in the absence of expert witnesses, the trial court's in

camera examination of the child is the better practice in order to insure that the determination of unavailability is well-founded.

¶ 27 Because Mother's only claim is her challenge to the admission of the tapes,[3] and we have concluded that there was no error in that regard, we are compelled to affirm the trial court's order setting out custody arrangements.

¶ 28 Order affirmed.

---

3. Mother does not claim that the substantive evidence presented in the tapes does not support the trial court's custody order; she claims only that the tapes should not have been admitted under § 5985.1.