## Commonwealth v. Garces

C.P. Monroe County, no. 235 Criminal 2006.

*Michael T. Rakaczewski, assistant district attorney,* for plaintiff.

*Fred Cutaio, public defender,* for defendant.

WORTHINGTON, *J.,* August 24, 2006—Isidros Garces, defendant, was arrested on January 26, 2006 and charged with two counts of rape of a child, a felony in violation of 18 Pa.C.S. §3121(c), two counts of sexual assault, a felony in violation of 18 Pa.C.S. §3124.1, one count of involuntary deviate sexual intercourse with a child, a felony in violation of 18 Pa.C.S. §3123(b), two counts of indecent assault on a person less than age 13, a misdemeanor in violation of 18 Pa.C.S. §3126(a)(7), one count of corruption of minors, a misdemeanor in violation of 18 Pa.C.S. §6301(a)(1), and one count of endangering the welfare of children, a misdemeanor in violation of 18 Pa.C.S. §4304(a). On February 13, 2006, a preliminary hearing was held before Magisterial District Justice Anthony J. Mangan. Prior to the hearing, Magisterial District Justice Mangan interviewed the 4-year-old male child victim (MQ) in chambers and determined that he was unavailable to testify under the Pennsylvania tender years exception. N.T., 02/13/2006 at 3-6. As a result, statements that MQ made to Stacy Dailey and Laurie Demark were admitted at the preliminary hearing. Following the hearing, all of the charges against the defendant were bound over to the court of common pleas and they were subsequently included in the criminal information that was filed by the Commonwealth on March 27, 2006.

On April 26, 2006, defendant filed a timely omnibus pretrial motion. Defendant seeks relief in the form of a

motion to suppress the hearsay statements of MQ.[1] Defendant argues that Magisterial District Justice Mangan erred in admitting the statements MQ made to Stacey Dailey. According to the defendant, MQ's statements were inadmissible because they failed to "provide sufficient indicia of reliability" as required by the tender years exception. 42 Pa.C.S. §5985.1(a)(1). Defendant also contends that Magisterial District Justice Mangan erred in determining that MQ was "unavailable" to testify as a witness. Defendant further avers that MQ's statements to Laurie Demark and Dr. Taroli were testimonial in nature and, therefore, should not have been admitted through either the tender years exception or the medical treatment exception. Finally, defendant argues that the statements made by MQ to Ms. Demark and Dr. Taroli should not have been admitted through the medical treatment exception because no medical examination was performed on the child. A hearing on defendant's omnibus pretrial motion (hearing) was held on May 15, 2006. Defendant filed a brief in support of omnibus pretrial motion on May 24, 2006 and the Commonwealth filed a brief in opposition to defendant's omnibus pretrial motion on June 8, 2006. Defendant's motion for omnibus pretrial relief is now before us for disposition.

The facts, as presented, show that on or about January 7, 2006, MQ told Stacey Dailey, his father's girlfriend, that the defendant had sexually assaulted him.[2] N.T.,

---

1. In addition, the defendant seeks relief in the form of a habeas corpus motion to dismiss; however, he failed to address this issue at the hearing or in his brief in support of omnibus pretrial motion; therefore, the issue is deemed waived.

2. The defendant is the ex-boyfriend of MQ's grandmother. The testimony presented at the preliminary hearing established that MQ

02/13/2006 at 11-12. Specifically, MQ related to Ms. Dailey that "Poppy [the defendant] takes his clothes off to kiss him and to put his peepee in his butt." *Id.*

As a result of these allegations, MQ was immediately taken to Pocono Medical Center where he was examined by both a registered nurse and an emergency room doctor. N.T., 02/13/2006 at 13. The hospital staff reported the allegations to the Stroud Area Regional Police Department. *Id.*

On January 16, 2006, MQ was brought by Stroud Area Regional Police Detective Susan Lyon to the Pegasus Child Advocacy Center where he was interviewed by Laurie Demark, a forensic interviewer employed by the center. During the course of the interview, MQ indicated to Ms. Demark that "Poppy put his peepee inside [his] butt." N.T., 02/13/2006 at 22. Following the interview, Dr. Andrea Taroli, a pediatrician specializing in child abuse and forensic pediatrics, performed a medical examination of MQ.[3] *Id.* at 23.

On January 24, 2006, Detective Susan Lyon interviewed the defendant at the Stroud Area Regional Police Headquarters. During the interview, the defendant admitted that he had put MQ's penis in his mouth and that he had put his penis in between MQ's buttocks. N.T., 02/13/2006 at 28. The defendant was subsequently arrested on January 26, 2006.

In his motion to suppress, defendant initially alleges that Magisterial District Justice Mangan committed an

---

considers the defendant to be his grandfather and he refers to him as "Poppy." N.T., 02/13/2006 at 9, 10, 25.

3. Dr. Taroli is the medical director at the center. N.T., 05/15/2006 at 7.

error of law and an abuse of discretion when he found that the statements that MQ made to Ms. Dailey were admissible evidence pursuant to the tender years exception. The tender years exception is codified at 42 Pa.C.S. §5985.1 and provides in relevant part:

"(a) General rule—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing physical abuse, indecent contact or any of the offenses enumerated in 18 Pa.C.S. chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

"(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

"(2) the child either:

"(i) testifies at the proceeding; or

"(ii) is unavailable as a witness.

"(a.1) Emotional distress—In order to make a finding under subsection (a)(2)(ii) that the child is unavailable as a witness, the court must determine, based on the evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

"(1) Observe and question the child, either inside or outside the courtroom.

"(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting."

The purpose of the tender years exception is to allow for the admission of a child's out-of-court statement due to the fragile nature of young victims of sexual abuse. *Commonwealth v. Bishop,* 742 A.2d 178, 184 (Pa. Super. 1999). Before a proffered statement can be admitted into evidence pursuant to the tender years exception, the trial court must assess the reliability of the statement and the availability of the child to testify. *Fidler v. Cunningham-Small,* 871 A.2d 231, 235 (Pa. Super. 2005). Any statement admitted under the tender years exception "must possess sufficient indicia of reliability, as determined from the time, content, and circumstances of its making." *Commonwealth v. Fink,* 791 A.2d 1235, 1248 (Pa. Super. 2002), citing *Commonwealth v. Bean,* 450 Pa. Super. 574, 577, 677 A.2d 842, 844 (1996). "There are several factors a court may consider in determining reliability [for purposes of the Tender Years Hearsay Act,] including, but not limited to, 'the spontaneity and consistent repetition of the statement(s); the mental state of the declarant; the use of terminology unexpected of a child of similar age; and the lack of a motive to fabricate.'" *Fidler,* 871 A.2d 231, 235, citing *Commonwealth v. Hunzer,* 868 A.2d 498, 510 (Pa. Super. 2005). "The main consideration for determining when hearsay statements made by a child witness are sufficiently reliable is whether the child declarant was particularly likely to be telling the truth when the statement was made." *Com-*

*monwealth v. Lyons,* 833 A.2d 245, 255 (Pa. Super. 2003).

In the instant matter, we find that the initial allegations of sexual abuse by the child victim were spontaneous and unprompted. MQ first related the allegations of sexual abuse to his father's long-term girlfriend, Stacey Dailey. N.T., 02/13/2006 at 11. According to Ms. Dailey's testimony at the preliminary hearing, she overheard MQ ask his sister to "make out" with him. *Id.* When Ms. Dailey asked MQ if he knew what it meant to "make out" with someone, he replied that it meant to kiss. *Id.* MQ related to Ms. Dailey that he had learned how to "make out" from Poppy. *Id.* MQ proceeded to tell Ms. Dailey that Poppy kisses him with his clothes off and puts his peepee in his butt. *Id.* The questions that Ms. Dailey posed to the child after his initial disclosure were non-accusatory and non-suggestive in nature.

Furthermore, MQ has consistently repeated the allegations of sexual abuse. On January 16, 2006, more than 10 days after the initial allegation, MQ reiterated to Laurie Demark, a forensic interviewer employed by the center, that Poppy had put his peepee inside his butt. N.T., 02/13/2006 at 21-22. When Ms. Demark asked MQ how he knew that Poppy's peepee went inside his butt, he replied that he knew that it went inside his butt because it hurt. *Id.* at 22. According to Ms. Demark, MQ "told me that Poppy's peepee looked old when he saw it. It was sticking up and that Poppy spit on his peepee and the spit came out of Poppy's peepee." *Id.*

Dr. Andrea Taroli provided testimony on the issue of MQ's mental and developmental state. Dr. Taroli first

met MQ in May of 2005. (Omnibus hearing, 05/15/2006.) At that time, the child was approximately 4 years of age and his verbal skills were very poor. (Omnibus hearing, 05/15/2006.) When Dr. Taroli reencountered MQ in January of 2006, approximately eight months after their initial meeting, MQ's verbal and developmental skills had improved significantly. (Omnibus hearing, 05/15/2006.) In Dr. Taroli's medical opinion, she did not believe that a child of MQ's mental state could be coached or encouraged to tell a consistent story that was not true. (Omnibus hearing, 05/15/2006.) According to Dr. Taroli, children between the ages of 4 and 5 are very difficult to coach in any significant manner. (Omnibus hearing, 05/15/2006.) Dr. Taroli further explained to the court that people who attempt to coach a 4-year-old child cannot anticipate every type of question that would be posed to him/her, including details and sensory experiences pertaining to the sexual abuse. (Omnibus hearing, 05/15/2006.) Furthermore, Dr. Taroli testified that it would be very difficult for a child such as MQ, who was developmentally delayed and who just began speaking well within the last several months, to be able to remember fabricated details and repeat them consistently. (Omnibus hearing, 05/15/2006.) We find the testimony of Dr. Taroli to be both credible and informative and, therefore, we conclude that it is highly unlikely that a child of MQ's mental state could be successfully coached by a third party to consistently repeat a fictitious allegation of sexual abuse.

MQ's graphic statements regarding the alleged sexual abuse demonstrate that he is familiar with terminology and sexual concepts that would ordinarily be foreign to

a child of similar age and experience. For instance, MQ has stated that the defendant put his peepee in his mouth and in his butt.

Finally, there was no evidence presented at either the preliminary hearing or the omnibus hearing to substantiate a claim that the child or any interested party had a motive to fabricate the sexual abuse allegations against the defendant. After carefully reviewing MQ's statements regarding the alleged sexual abuse in light of the relevant case law, we find that MQ's statements are relevant and provide sufficient indicia of reliability. Moreover, we find that it is particularly likely that MQ was telling the truth at the time he made the disclosure to Ms. Dailey.

Defendant's second point of contention is that Magisterial District Justice Mangan committed an error of law and an abuse of discretion when he determined that MQ was "unavailable" as a witness pursuant to the tender years exception. As we have already mentioned, the tender years exception requires not only that the child's hearsay statement be reliable, but also that the declarant testify at the proceeding or, in the alternative, be deemed "unavailable."

"The definition of unavailability for purposes of section 5985.1 is unlike standard definitions for the term in the context of hearsay. Instead, unavailability is narrowly defined in explicit terms within the Act. The law requires the trial court to determine that, based on the evidence presented to it, the giving of testimony by the child would cause the child to suffer 'serious emotional distress' such that it would 'substantially impair the

child's ability to reasonably communicate.' 42 Pa.C.S. §5985.1(a.1). In making this finding, the trial court has the option of observing and questioning the child. It may also rely on testimony from others connected to the child, such as a parent, guardian, or a person who has dealt with the child in a medical or therapeutic setting. 42 Pa.C.S. §5985.1(a.1)(1) and (2). These possible avenues of inquiry are merely advisory, not mandatory." *Fidler,* 871 A.2d at 237.

According to the defendant, "District Justice Mangan made his determination that MQ was unavailable to testify, not because of emotional distress, but because the child was not competently answering the judge's questions." Defendant's brief in support of omnibus pretrial motion, at 7.

At the outset of the in camera hearing, Magisterial District Justice Mangan stated on the record that the attorney for the Commonwealth, the defense attorney, and MQ had convened in his chambers for an examination under the tender years exception in order to determine whether MQ was available to testify. N.T., 02/13/2006 at 3. Magisterial District Justice Mangan's statement demonstrates that he was well aware of the applicable statute and the governing standards for determining whether a child victim is unavailable to testify. As such, Magisterial District Justice Mangan proceeded to ask MQ a series of questions. MQ's responses demonstrated that he knew his name, age, his sisters' names, and their respective ages. *Id.* at 3-5. MQ also demonstrated that he was able to identify the difference between the truth and a lie, as well as the consequences associated with the latter. *Id.* at 3-4. From our review of the transcript, it

appears as though the only time MQ answered incorrectly was when Magisterial District Justice Mangan inquired as to whether MQ was aware of the reason why he was at the preliminary hearing. *Id.* at 5. After having the opportunity to observe the demeanor of the 4-year-old child victim, the magisterial district justice ultimately determined that, although the witness was very young, he believed that MQ's statements regarding the alleged sexual abuse were probably true. *Id.* at 6. Additionally, the magisterial district justice decided that MQ would not testify at the preliminary hearing. *Id.*

After carefully reviewing the relevant portions of the transcript from the preliminary hearing, we disagree with the defendant's assertion that the magisterial district justice erred in determining that the child was unavailable to testify. Although Magisterial District Justice Mangan did not specifically state on the record that his finding of unavailability was based on the serious emotional distress that MQ would incur as a result of testifying, he was well aware of the governing statute and the standard for determining unavailability at the time that he conducted the interview with the child. With those principles in mind, Magisterial District Justice Mangan ultimately concluded that having the child testify would result in him suffering serious emotional distress that would substantially impair his ability to reasonably communicate and, therefore, he found the child unavailable to testify.

As the Commonwealth acknowledged in their brief, our Superior Court has endorsed an in camera examination of a child victim as being the most effective means of determining whether or not a child victim is available

to testify. Brief in opposition to defendant's omnibus pretrial motions, at 7. In *Fidler,* our Superior Court acknowledged that:

"The [Tender Years] Act does not require the testimony of experts; it only provides that the court may consider such testimony when offered. Even though the Act does not mandate the type of evidence upon which the court must rely, it does require that some concrete evidence of serious emotional distress be presented. We believe that in the absence of expert witnesses, the trial court's in camera examination of the child is the better practice in order to insure that the determination of unavailability is well-founded." 871 A.2d at 238.

For the foregoing reasons, we concur with the magisterial district justice's determination that MQ was unavailable to testify pursuant to the tender years exception. Furthermore, since we agree that the child's statements were reliable and that the child was unavailable to testify, we ultimately find that the magisterial district justice's decision to admit MQ's statements to Ms. Dailey pursuant to the tender years exception was appropriate.

Defendant further contends that Magisterial District Justice Mangan erred in admitting the statements that MQ made to Ms. Demark and Dr. Taroli pursuant to the tender years exception and/or the medical treatment exception. Brief in support of omnibus pretrial motion, at 8, 12.

As we have already mentioned, the tender years exception allows the out-of-court statements of a child sexual abuse victim to be admitted as evidence at a criminal proceeding if the court determines that the statements

are reliable and the child either testifies at the proceeding or is found to be unavailable as a witness. 42 Pa.C.S. §5985.1. The medical treatment exception provides as follows:

"The statements made to a medical doctor for the purpose of medical diagnosis and treatment are excluded from the hearsay rule and, thus, testimony repeating the out-of-court statements made to the doctor for such purposes are admissible as substantive evidence at trial. *Commonwealth v. Fink,* 791 A.2d 1235, 1246 (Pa. Super. 2002). However, before such statement can be admitted under this exception, two requirements must be met: (1) the declarant must make the statement for the purpose of receiving medical treatment, *e.g.,* statements relating to the cause of injury, including testimony repeating statements made to nurses for the purposes of medical treatment and diagnosis; and (2) the statement must be necessary and proper for diagnosis and treatment, *e.g.,* statements to medical personnel as to how the person sustained the injuries, but not the identity of the perpetrator. *Id.,* citing *Commonwealth v. Smith,* 545 Pa. 487, 493, 681 A.2d 1288, 1291 (1996). However, statements to physicians retained solely for the purpose of trial are inadmissible under this exception. *Id.*" Pa.R.E. 803(4).

It is the defendant's position that these statements were inadmissible pursuant to the tender years exception and/or the medical treatment exception because the statements were testimonial in nature. Brief in support of defendant's omnibus pretrial motion, at 8, 12.

"In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L. Ed.2d 177 (2004), the United States Supreme Court overruled prior precedent and established

a new framework for analyzing claims relative to the Confrontation Clause of the Sixth Amendment. Prior to *Crawford,* any out-of-court statement could be admitted without offending the Confrontation Clause as long as 'the evidence [fell] within a firmly rooted hearsay exception or . . . contain[ed] particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statements' reliability.' *Lily v. Virginia,* 527 U.S. 116, 124-25, 119 S.Ct. 1887, 1894, 144 L. Ed.2d 117 (1999), citing *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L. Ed.2d 597 (1980). *Crawford* rejected the general framework set forth in *Roberts* with respect to prior testimonial statements, holding that out-of-court statements by witnesses that are testimonial are barred under the Sixth Amendment to the United States Constitution unless 'the declarant is unavailable, and . . . the defendant has had a prior opportunity to cross-examine,' regardless of whether such statements are deemed reliable by the trial court." *Commonwealth v. Charlton,* 902 A.2d 554, 560 (Pa. Super. 2006).

Under the test announced in *Crawford,* a critical distinction is drawn between hearsay which is testimonial in nature and hearsay which is not. *Commonwealth v. Eichele,* 204 WL 2002212, 66 D.&C.4th 460 (2004). Unfortunately, the United States Supreme Court failed to articulate a comprehensive definition of "testimonial"; therefore, the exact meaning of the term remains uncertain among the courts. *Crawford,* 124 S.Ct. at 1374. However, "[t]he hallmark of testimonial statements appears to be solemn declarations or affirmations made in a formal proceeding or formal manner, or in an official setting, for the purpose of establishing or proving some

fact which the declarant expects or reasonably should expect will be used for further legal proceedings." *Eichele,* 2004 WL 2002212, 66 D.&C.4th at 466, citing *Crawford,* 124 S.Ct. at 1374.

In the instant matter, it is undisputed that the Stroud Area Regional Police were responsible for retaining the services of the Pegasus Child Advocacy Center. Dr. Taroli testified that the underlying purpose of the center is to evaluate the allegations of child abuse in a child friendly environment. (Omnibus hearing, 05/15/2006.) According to Dr. Taroli, the center attempts to have everyone that is involved in the investigation, such as the police and the assigned Children and Youth caseworker, present at the assessment center at the time of the interview and physical examination so that the child does not have to be unnecessarily traumatized by having to reiterate the allegations of abuse to various individuals. *Id.* Dr. Taroli further testified that the physical examination is performed to ensure that the child is healthy and that he/she has not sustained any injuries or infectious diseases as a result of the alleged sexual abuse. *Id.* She also acknowledged that most of the police departments in Monroe County utilize her services and expertise in child abuse investigations. *Id.*

We note that this exact issue was addressed in *Commonwealth v. Rapp* (683 Criminal 2005, opinion December 13, 2005) and *Commonwealth v. Ramsour* (1245 Criminal 2005, opinion August 8, 2006). In both of those cases, the trial court determined that the child victim's statements to Dr. Taroli were not admissible at trial since they were testimonial in nature.

After carefully reviewing the record, we conclude that the primary purpose of MQ's statements to Dr. Taroli

and Ms. Demark was to aid the police in obtaining information relevant to the Commonwealth's investigation into the alleged sexual assault, rather than for medical diagnosis and treatment. Although Dr. Taroli maintained that she does not conduct the interviews and examinations on behalf of the police, we find that the police retained the services of the center as part of their investigative work. Therefore, we conclude, as did our colleagues, that in such circumstances the child victim's hearsay statements to Dr. Taroli and Ms. Demark are testimonial and, therefore, may not be admitted at trial.

We draw attention to our Superior Court's holding in *Commonwealth v. Charlton,* 902 A.2d 554 (Pa. Super. 2006). In *Charlton,* our Superior Court allowed the Commonwealth to introduce a child victim's out-of-court statements to a police officer and a Children and Youth caseworker pursuant to the tender years exception. However, the child victim in *Charlton,* unlike the child in the case at bar, testified at length regarding the underlying events at both the pretrial competency hearing and the jury trial; therefore, the defendant had more than ample opportunity to confront and cross-examine the child victim. *Id.* at 4.

In the instant matter, if the Commonwealth calls MQ to testify as a witness at the time of trial, the defendant will have the opportunity to cross-examine MQ and the concerns of *Crawford* will not be implicated. Moreover, if MQ testifies, his out-of-court statements to Ms. Demark and Dr. Taroli can be admitted as evidence at trial. As such, defendant's motion to suppress the hearsay statements of the child victim to Ms. Demark and Dr. Taroli is denied without prejudice; however, the defen-

dant may raise this issue again at the time of trial if the Commonwealth attempts to admit these hearsay statements without calling MQ to testify.

Finally, defendant avers that MQ's statements to Ms. Demark and Dr. Taroli were inadmissible through the medical treatment exception because no medical examination was performed on the child. Brief in support of defendant's omnibus pretrial motion, at 12. We find this argument to be without merit because Ms. Demark testified that on January 16, 2006, Dr. Taroli performed a medical examination of MQ. N.T., 02/13/2006 at 23.

Accordingly, we enter the following:

## ORDER

And now, August 24, 2006, in consideration of defendant's omnibus pretrial motion, we enter the following order:

(1) Defendant's motion to suppress the hearsay statements of the child victim to Ms. Dailey is denied.

(2) Defendant's motion to suppress the hearsay statements of the child victim to Ms. Demark and Dr. Taroli is denied without prejudice and the defendant may raise this issue again at the time of trial if the Commonwealth fails to call the child victim to testify.