J-S29001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: M.MCC., A MINOR<br><br>APPEAL OF: M.M. | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 14 EDA 2019 |

Appeal from the Order Dated November 30, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0000553-2017

BEFORE: BENDER, P.J.E., LAZARUS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED JULY 23, 2019**

M.M. (Appellant) appeals from the order dated November 30, 2018, finding child abuse of M.MCC. (Child), born in December of 2012, by Appellant pursuant to the Child Protective Services Law (CPSL), 23 Pa.C.S. §§ 6301 *et seq.*[1] We affirm.

In its Pa.R.A.P. 1925(a) opinion, the trial court stated that it had heard testimony from nine witnesses over the course of four hearings, which were held on May 4, 2018, August 8, 2018, September 21, 2018, and November 30, 2018. The court explained that in the transcript of the November 30th hearing, it addressed "its findings of child abuse against [Appellant] and [its] determination to change the *indicated* report of child abuse … to a *founded* report of child abuse …." Trial Court Opinion (TCO), 2/26/19, at 2 (emphasis in original). In order to address Appellant's issues raised on appeal, we set

---

[1] Although some of the parties in their briefs identify Appellant as Child's stepfather, he is the live-in boyfriend of Child's mother.

forth the court's discussion of its findings of abuse sustained by Child that the trial court concluded were perpetrated by Appellant, as follows:

> So, we started the abuse hearing on May 4th of this year. And at that time, this [c]ourt, based on the tender years motion filed by the Child Advocate on behalf of [Child], found that [Child] was unavailable as a witness.
>
> Dr. Theodorson, o[f] Abington Hospital, testified and indicated that [Child] presented to the ER in January of 2017, with his grandmother and a coworker of this grandmother, due to injuries that he had sustained. He had numerous bruises over his body.
>
> Entered into evidence was [the Department of Human Services] DHS Exhibits A through I, which were pictures taken when he presented at the hospital of his injuries.
>
> The testimony from Dr. Theodorson was that the pattern of bruises [Child] had were not consistent with bruising for a child of this age. The appearance of the bruises indicated that they had occurred within a few days prior to him presenting at the ER. They had different shades of color, which reflected that they were evolving and healing. He had multiple contusions, and Dr. Theodorson was able to say to a reasonable degree of medical certainty that the bruises were inflicted and non-accidental and that [Child] would have been in substantial pain at the time they occurred and for sometime thereafter.
>
> Dr. Theodorson indicated—he was unable to say—whether the doctor was male or female, that's irrelevant—that they were unable to say how long the pain would have lasted, but that the pain would have existed at the time the injuries were infl[i]cted; that the number of bruises could have impaired the child's ability to walk, to sit, to sleep.
>
> The other person that testified was a forensic nurse from Abington Hospital, Trish Crowe, and she is a forensic nurse/examiner, and indicated that she is consulted when there's suspicion for abuse and children are brought into the hospital. And she is the one that took the photos that were entered into evidence. She indicated that she also had concerns for abuse, the bruising was concerning, the multiple stages of healing was concerning, and … she indicated that as she was taking

information on the day he presented around the injuries, the identified alleged perpetrator was [Appellant], mom's boyfriend.

Michelle Kline of [the Philadelphia Children's Alliance] PCA also testified, having been qualified as someone who had done hundreds of interviews for children when there are allegations of abuse. She testified that she interviewed [Child], and [Child] said that [Appellant] slapped him all over his body, hit him with a hammer, put him in a hot shower. She did identify concerns that [Child] was being coached not to disclose what had happened to him. Her competency evaluation of [Child] indicated that he knew the difference between the truth and a lie and as such was telling the truth when she interviewed him. And she was unable to give a time frame of how long the abuse had concern [*sic*]. But, again, [Child] identified [Appellant] as the individual who inflicted the abuse.

DHS social worker, Rudy Petruzzelli, who was … the intake worker at the time, indicated that - he indicated the report [was] based on the bruising that he observed and based on his investigation. He did indicate that [Appellant] denied that he caused the injuries, but he indicated [Appellant] as the perpetrator of the abuse as to [Child] based on medical evidence. His testimony was that [Child] would not talk to him at the time that he interviewed.

We had a Rosalie Gonzales (sp), who had been a babysitter, identified for also taking care of [Child], and she indicated that she knew mom because they worked together. She is the individual who discovered the bruises on [Child's] body and reported them to mom. She indicated that he had burn marks on his hand, his eye was swollen, his face was swollen on a previous incident, and she had taken him to the hospital. She testified, and I found her testimony credible, as I did Dr. Theodorson's and Nurse Crowe['s] and Michelle Kline['s]. She testified that mom had disclosed to her that [Appellant] spanked [Child].

She also indicated that at one point she dropped [Child] off at [Appellant's] house and [Child] started crying hysterically and did not want to get out of her car.

Morgan Webb, [Child's] [Children's Crisis Treatment Center] CCTC trauma therapist, also testified, and testified that [Child] was referred to her based on allegations of child abuse by [Appellant], and he was diagnosed with adjustment disorder and anxiety.

… [Child] disclosed to [Ms. Webb] that [Appellant] burned his hands with hot water, flicked his pee-pee, gave him bruises.

We had additional testimony from Carla Fletcher, [Child's] child advocate social worker, and that when she spoke with [Child], [Child] initiated a discussion with her where he said that "[Appellant] gave me bruises," that he was afraid of [Appellant] and that he reported that he was told he would get a present if he said [Appellant] didn't do it.

Step-maternal grandmother, Ms. Pettit, also testified in May that [Child] was still very much afraid of [Appellant], and actually just the name [M.] – and when a relative came to the family's home for Easter and mentioned his name as [M.] that [Child] froze, his eyes got wide, and he said he wanted to leave.

. . .

When we came back on 9/21, … paternal grandmother testified in [Appellant's] defense. And that was [Appellant's] mother, to be clear as to the paternal grandmother. Her testimony attempted to refute that [Appellant] was … babysitting [Child] during the time that the injuries occurred to [Child]. She indicated that [Child], [H.S. (Child's Mother)], and … [Appellant] resided with her when [Appellant] came home on house arrest, and she testified that she never saw … [Appellant] strike [Child]. I did not find – based on the overwhelming evidence from the other witnesses, I did not find paternal grandmother's testimony to be very relevant in terms of eliminating [Appellant] as the alleged perpetrator of the abuse.

With respect to the request from DHS and Child Advocate, the request was that this [c]ourt find child abuse as to [Appellant] based on [23 Pa.C.S. §] 6381(d) in particular –

. . .

6183(d) is: Prima facie evidence of abuse. Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other persons responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

With respect to the definition of child abuse, 6303 provides the definitions for child abuse. Specifically 6303(b.1)(1) indicates

that "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following: Causing bodily injury to a child through any recent act or failure to act.

I am going to find that [Appellant] is guilty of child abuse as to [Child]. The overwhelming evidence from all of the parties indicate that he, mom and - were in fact caring for ... [Child] and responsible for caring for [Child] at the time that the injuries occurred.

The testimony of the Doctor, the Nurse, and the PCA interviewer together indicate that [Child] consistently and credibly identified [Appellant] as the perpetrator of the child abuse.

And given the nature of the injuries given, Dr. Theodorson's – let me make sure I get the name right – Theodorson's indication to a reasonable degree of medical certainty that the injuries were not self-inflicted, were, in fact, inflicted injuries that would have caused substantial pain and evidence of child abuse.

I am finding, under 6381(d), that [Appellant] is the perpetrator of child abuse based on the prima facie evidence.

N.T., 11/30/18, at 7-14.

Appellant filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). He raises the following issue for our review:

Whether the evidence was insufficient for the court to find [] Appellant[] an indicated perpetrator of abuse by clear and convincing evidence where there was evidence that the child did not initially identify him and there was evidence that either he did not have access to the child or that the child was in the care of others at the time the incident allegedly occurred?

Appellant's brief at 3.

Appellant's arguments challenge the sufficiency of the evidence to support the trial court's decision that Child was abused by Appellant, in that the only evidence came from Child through the testimony of others, rather

- 5 -

than direct testimony from Child at the hearings. Specifically, Appellant asserts that Child did not initially disclose abuse during the emergency department visit. He only started to provide information months later, gradually adding information about additional acts of abuse. Appellant further contends that he had only been released from jail about ten days before Child was taken for the hospital emergency department visit and that Child's grandparents had taken care of Child during the same ten-day period. Essentially, Appellant argues that numerous people had access to Child at the time Child's injuries occurred, that Child's "story" changed over time, and that no corroborating evidence was presented by DHS and Child's Advocate.

The Pennsylvania Supreme Court sets forth our standard of review of a dependency case, stating:

> Initially, we reiterate that "the standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). We review for abuse of discretion, *id.* ….

> [Moreover,] the applicable version of the CPSL define[s] "child abuse" to include "any recent act or failure to act" which causes "nonaccidental serious physical injury;" "any recent act, failure to act or series of such acts or failures to act" "which creates an imminent risk of serious physical injury;" or "serious physical neglect" "which endangers a child's life or development or impairs the child's functioning." 23 Pa.C.S. § 6303(b)(1)(i), (iii), (iv)…. In turn, the CPSL defined "serious physical injury" as an injury that causes "severe pain" or "significantly impairs" the child's physical functioning temporarily or permanently. *Id.* § 6303(a). While a petitioning party must demonstrate the existence of child abuse by the clear and convincing evidence

standard applicable to most dependency determinations, 42 Pa.C.S. § 6341(c) (recognizing clear and convincing evidence as the necessary standard for concluding that a child is dependent), the identity of the abuser need only be established through *prima facie* evidence in certain situations....

*In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015).

For the definition of *prima facie* evidence in the context of a child abuse case, we look to Section 6381 of the CPSL, which provides the following:

> **6381.  Evidence in court proceedings.**
>
> . . .
>
> **(d) Prima facie evidence of abuse.**—Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S. § 6381(d).  Moreover,

> With regard to dependency cases involving child abuse, the safety of the child is paramount.  *In re R.P.*, 957 A.2d 1205 (Pa. Super. 2008).  As we have explained,
>
> [t]he Juvenile Act, 42 Pa.C.S. §§ 6301-65, which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"), 52 U.S.C. § 671 *et seq.*, controls the adjudication and disposition of dependent children.  The policy underlying these statutes aims at the prevention of children languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment.  Furthermore, the 1998 amendments to the Juvenile Act, as required by ASFA, place the focus of dependency proceedings on the child.  Safety, permanency, and the well-being of the child must take precedence over all other considerations, including the rights of the parents.

*Id.* at 1217-18 (some internal citations omitted).

*Interest of S.L.*, 202 A.3d 723, 727 (Pa. Super. 2019).

Additionally, we note that the CPSL defines "child abuse" as follows:

**(b.1) Child abuse.**—The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:

> (1) Causing bodily injury to a child through any recent act or failure to act.

> (5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

23 Pa.C.S. § 6303 (b.1)(1), (5). We also recognize that Section 6303(a) of the CPSL defines bodily injury as "impairment of physical condition or substantial pain."

In responding to Appellant's arguments, we begin with Appellant's allegation that because Child did not testify in light of the petition filed pursuant to the Tender Years Doctrine, the court could not properly assess Child's "consistency and credibility." Appellant's brief at 10. *See* N.T., 5/4/18, at 11-18. Our review reveals that Appellant failed to object to the petition, the testimony provided to support the petition, or the court's grant of the petition. Therefore, Appellant has waived this argument. Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). However, our review reveals that the trial court properly considered the Child Advocate's petition based on the Tender Years

Doctrine, finding that Child was an unavailable witness. **See** 42 Pa.C.S. §
5985.1.[2] **See also** N.T., 5/4/18, at 11-18.

Next, Appellant appears to take issue with a lack of medical evidence to
corroborate Child's claims regarding any abuse beyond the bruises initially
discovered at the emergency room visit. Thus, Appellant seems to argue that
it was not proven that Child sustained bodily injury or impairment or
substantial pain. Appellant's issue as stated in the statement of questions
present in his brief does not challenge this finding by the court and can be
considered waived. Regardless, the testimony provided by Dr. Theodorson
and Nurse Trish Crowe, which was found credible by the trial court, supports
the finding of child abuse under 23 Pa.C.S. § 6303(b.1)(1), (5).

We next turn to Appellant's main argument that he was not the
perpetrator of the child abuse. This argument centers on Appellant's
allegations that he was only released from jail ten days before the emergency
room visit, that Child's revelations of additional abuse were only revealed
months later, and that numerous other individuals had access to Child during
that same period of time. However, a review of the record reveals that the
numerous witnesses testified as to Child's consistent statements to them
about Appellant's actions and Child's showing fear of Appellant. Additionally,

---

[2] Section 5985.1 provides the framework under which the court may find a
child under the age of 12 to be an unavailable witness. **See also Fidler v.
Cunningham-Hall**, 871 A.2d 231, 235 (Pa. Super. 2005) (discussing and
applying the tender years statute that provides for the admissibility of hearsay
statements by an abused child who is deemed unavailable).

testimony revealed that Child was promised gifts if he would not tell that Appellant had given him the bruises and that, after being placed with maternal grandfather, Child became more comfortable and revealed more of the details of the abuse.

Based on this Court's review, it is evident that clear and convincing evidence exists in the record showing that Child suffered injuries due to the abuse perpetrated by Appellant. Moreover, based on evidence presented by Appellant, *i.e.*, his mother's testimony, which was not found credible or persuasive by the trial court, Appellant has failed to rebut the *prima facie* evidence that he was the individual who committed the abuse. Accordingly, we conclude that the court did not abuse its discretion in this determination. Appellant has not convinced us otherwise. We, therefore, affirm the order on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/19